**Glenn ANDERSON, Plaintiff,**

v.

**ACME MARKETS, INC.; Eileen Johnson, Individually and in her official capacity as Superintendent of Transportation of Defendant Acme; Jack Carlson, Individually and in his official capacity as District Manager for Defendant Acme; Robin Roberts, Individually and in his official capacity as Manager for Defendant Acme, Defendants.**

Civ.A. No. 01–5251.

United States District Court,
E.D. Pennsylvania.

Dec. 31, 2002.

---

Adrian J. Moody, Moody and Anderson, P.C., Philadelphia, PA, for Plaintiff.

Elizabeth A. Malloy, Klett, Lieber, Rooney & Schorling, Victoria L. Zellers, Klett, Rooney, Lieber & Schorling, Philadelphia, PA, for Defendants.

## *ORDER AND MEMORANDUM*
## *ORDER*

DuBOIS, District Judge.

### *ORDER*

**AND NOW,** this 31st day of December, 2002, upon consideration of Defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction (Document No. 13, filed October 28, 2002), and Plaintiff's Response in Opposition to Defendants' Motion to Dismiss (Document No. 15, filed November 13, 2002), and Defendants' Reply to Plaintiff's Response (Document No. 16, filed November 19, 2002), **IT IS ORDERED** that, for the reasons set forth in the following Memorandum, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **GRANTED** and plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE** to the right of the Trustee in Bankruptcy to be substituted as a party-plaintiff in the

event the Bankruptcy Court reopens the bankruptcy proceedings.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **MARK** the case **CLOSED FOR STATISTICAL PURPOSES.**

### MEMORANDUM

This case arises out of plaintiff Glenn Anderson's allegations of racial discrimination by defendants—his employer, Acme Market, Inc. ("Acme"), and three Acme employees, Eileen Johnson, Jack Carlson, and Robin Roberts (collectively "defendants"). Claims against five other Acme employees—Robert Lacky, Michael Bulifant, Michael Gill, Robert McLaughlin and Carl Jablonski—were dismissed by agreement.

Plaintiff alleges in his Complaint, *inter alia,* disparate treatment on the basis of race and a racially hostile work environment. Defendants respond by arguing that plaintiff does not have standing to pursue the action because it is part of plaintiff's bankruptcy estate and thus can only be asserted by the Trustee in Bankruptcy.

Presently before the Court is defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction (Document No. 13, filed October 28, 2002). For the reasons which follow, the Court grants the Motion for lack of standing and dismisses plaintiff's claims without prejudice.

## I. BACKGROUND

Defendant Acme is engaged in the business of distribution and selling food products and other merchandise. Complaint ¶ 4. As part of its business, Acme operates a large fleet of tractor-trailer trucks to transport food and other products from its warehouses to its various retail stores. *Id.* ¶ 24. Plaintiff was hired by Acme as a tractor-trailer truck driver in May 1998 and received his work assignments at Acme's distribution center in Denver, Pennsylvania. *Id.* ¶¶ 4, 26. Defendants Johnson, Carlson, and Roberts are supervisors at this center. *Id.* ¶¶ 5, 9, 10.

It is "company policy" that trucks available for use are assigned to drivers through a bidding process based on the seniority of the bidding driver. *Id.* ¶ 25. In April 2000, plaintiff placed a bid for a particular truck, but was denied its use. *Id.* ¶¶ 27, 29. Plaintiff alleges that even though this truck was available for use, contrary to claims that it was "out of service," plaintiff and other black drivers were denied the right to use it on account of their race. *Id.* ¶¶ 27, 29, 31–33.

In April 2000, plaintiff filed a written complaint with defendant Johnson about the "preferential assignment to white drivers and the failure to make certain trucks available to the Plaintiff and other black drivers." *Id.* ¶ 36. Plaintiff also complained of other preferential treatment afforded to white drivers—in overtime work opportunities, check-cashing privileges, assistance in unloading trucks, and reimbursement of work-related expenses—"for no other reasons than that they were white," and the use of "demeaning" references to blacks, including plaintiff, by white drivers. *Id.* ¶¶ 37–38, 40, 44. Defendant Johnson allegedly took no action in response to these complaints. *Id.* ¶ 42.

In August 2000, plaintiff complained to defendant Johnson and Robert McLaughlin, the Labor Relations Supervisor of defendant Acme, "about having been physically pushed by a white driver;" again it is alleged that no action was taken in response. *Id.* ¶ 48. In October 2000, plaintiff placed a bid for a particular truck, but defendant Acme assigned that truck to Mr. Seedes, a white driver, despite the fact

that plaintiff was more senior. *Id.* ¶ 51. Thereafter, on November 16, 2000, plaintiff and Mr. Seedes argued over the use of that truck and an altercation between the two drivers ensued. *Id.* ¶ 52. Later that same day, as a result of the altercation, both plaintiff and Mr. Seedes were suspended from work pending an investigation into the matter. *Id.* ¶¶ 52, 55.

As part of its investigation, defendant Acme offered to allow plaintiff to return to work "but only upon the stipulation that he accept a determination that he was the aggressor" and a "final warning" providing that future acts of "threatening and/or subordinate behavior" will result in discharge. *Id.* ¶ 56. Believing this proposal was pretextual and retaliatory—on account of his previous complaints of discrimination—and refusing to accept responsibility as the aggressor in the altercation with Mr. Seedes—plaintiff rejected defendant Acme's proposal and has remained suspended from work. *Id.* ¶¶ 57–59.

## II. PROCEDURAL HISTORY

 On November 20, 2000, plaintiff completed an EEOC Charge Questionnaire in which he alleged that defendant Acme did not give black drivers the same opportunities for overtime work and truck assignments as white drivers. *See* Defs.' Mtn. at Ex. A.[1] He filed a formal Charge of Discrimination with the EEOC on January 2, 2001, Complaint ¶ 22, alleging Title VII violations based on the above-mentioned preferential treatment afforded to white drivers, defendant Acme's retaliato-

ry return-to-work proposal, and a racially hostile work environment created by demeaning references to blacks made by white drivers and denial of the use of a preferred truck by claiming it was "out of service." Defs.' Mtn. at Ex. C.

Plaintiff filed a Voluntary Petition in Bankruptcy under Chapter 7 of the Bankruptcy Code on December 27, 2000 ("original Chapter 7 petition"); he filed an Amended Petition on January 16, 2001 ("amended Chapter 7 petition"). *Id.* at Exs. D, E. A Trustee of plaintiff's bankruptcy estate was then appointed. As required under 11 U.S.C. § 521(1)[2], plaintiff attached to both his original and amended Chapter 7 petitions a Statement of Financial Affairs and Schedules of Assets and Liabilities (the "Schedules"). The Schedules did not list as an asset or otherwise identify plaintiff's claims of discrimination against defendant Acme. *Id.* On May 24, 2001, plaintiff's Chapter 7 case was closed and the Trustee was discharged. *Id.* at Ex. G.

On August 23, 2001, three months after the bankruptcy case was closed, plaintiff received a right-to-sue letter from the EEOC and filed the instant lawsuit on October 16, 2001. In the Complaint, plaintiff alleges the following: (1) violations of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq.*, against defendant Acme, (2) a violation of 42 U.S.C. § 1981 against defendant Acme and defendant Johnson for depriving plaintiff of the right to make and enforce contracts by denying him the "rights and priv-

---

1. In reviewing a factual challenge to a court's subject matter jurisdiction pursuant to Rule 12(b)(1), a court is not limited to the allegations in plaintiff's complaint. *See Gould Electronics, Inc. v. United States,* 220 F.3d 169, 176 (3d Cir.2000); *Gotha v. United States,* 115 F.3d 176, 178–79 (3d Cir.1997); *Mortensen v. First Fed. Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977).

2. 11 U.S.C. § 521(1) provides, in pertinent part, that all bankruptcy debtors must "file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs."

ileges of his seniority" due to his race, Complaint ¶¶ 78, 79; (3) a violation of 42 U.S.C. § 1985(3) under the Fourteenth Amendment against defendant Acme and defendants Johnson, Carlson, and Roberts for conspiring to deprive plaintiff "of the use of certain trucks, of his seniority, and of the rights and privileges of his employment" because of his race, *id.* ¶ 83; and (4) violations of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. S.A. § 951, *et seq.* for unlawful racial discrimination against defendant Acme and defendants Johnson, Carlson, and Roberts.

The Complaint also included § 1981 and § 1985(3) claims against Acme employees Lacky, Bulifant, and Gill, a § 1985(3) claim against Acme employees McLaughlin and Jablonski, and a state constitutional claim against defendant Acme. The claims against Lacky, McLaughlin, and Jablonski were dismissed by agreement on June 10, 2002. The claims against Bulifant and Gill and the state constitutional claim were dismissed by agreement on July 16, 2002.

## III. DISCUSSION

### A. The Bankruptcy Estate Under Chapter 7 of the Bankruptcy Act

■ The bankruptcy estate encompasses, *inter alia,* "all legal and equitable interests of the Debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541 must be read broadly in determining what constitutes property of the bankruptcy estate. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (determining that "Congress intended a broad range of property to be included in the estate").

"Courts have uniformly held that the broad scope of § 541 encompasses causes of action existing at the time" the bankruptcy action commences. *Cain v. Hyatt,* 101 B.R. 440, 441–42 (E.D.Pa.1989) (cita-

tions omitted); *see also In re Ozark Restaurant Equipment Co.,* 816 F.2d 1222, 1225 (8th Cir.1987), *cert. denied,* 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987) (stating that "it is clear that causes of action belonging to the *debtor* at the commencement of the case are included within the definition of property of the estate") (emphasis in original); *Tignor v. Parkinson,* 729 F.2d 977, 980 (4th Cir.1984) (holding that the "scope of [section 541] is broad" and "includes all kinds of property, including causes of action"); *Lambert v. Fuller Co., Inc.,* 122 B.R. 243, 246 (E.D.Pa. 1990) (following *Cain's* "more expansive approach" in determining the breadth of § 541 to hold that causes of action which accrued prior to the filing of the bankruptcy petition are included in the bankruptcy estate).

■ Upon the filing of a Chapter 7 petition, an interim Trustee is appointed to administer, *inter alia,* the property of the estate. *See* 11 U.S.C. § 701. The Trustee is the sole representative of the estate. *See* 11 U.S.C. § 323(a). As such, the Trustee has the exclusive right to prosecute causes of action that are property of the bankruptcy estate. *See* 11 U.S.C. § 323(b); *see also Jones v. Harrell,* 858 F.2d 667, 669 (11th Cir.1988) (concluding that a "trustee succeeds to all causes of action held by a debtor at the time the bankruptcy petition is filed"); *In re Labrum & Doak,* No. CIV.A. 99–753, 1999 WL 667284, at *1 (E.D.Pa. Aug. 26, 1999) (holding that the Trustee "alone has the 'capacity to sue and be sued' ") (quoting 11 U.S.C. § 323(b)). Thus, after a Trustee is appointed, a Chapter 7 debtor no longer has standing to pursue a cause of action which accrued at the time the Chapter 7 petition was filed because "[o]nly the trustee ... has the authority to prosecute and/or settle such causes of action." *Cain,* 101 B.R. at 442.

██ A debtor may regain standing to pursue a cause of action if it is abandoned by the Trustee. Under 11 U.S.C. § 554(a), the Trustee may abandon property which is burdensome to the estate or that is of inconsequential value to the estate. Pursuant to 11 U.S.C. § 554(b), the bankruptcy court may order the Trustee to abandon such property at the request of a party. However, under 11 U.S.C. § 554(c)[3], a cause of action that was never scheduled cannot be abandoned to the debtor. *See also Harris v. St. Louis University,* 114 B.R. 647, 649 (E.D.Mo.1990) (concluding that "plaintiff's cause of action could not be abandoned [by the Trustee] pursuant to 11 U.S.C. § 554(c) because the cause of action was never scheduled"). An unscheduled cause of action thus remains property of the estate pursuant to 11 U.S.C. § 554(d), which provides that "property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate." *See also Calabrese v. McHugh,* 170 F.Supp.2d 243, 256 (D.Conn.2001) (stating that "[a] cause of action is part of the estate even if the debtor failed to schedule the claim in his petition" and concluding that "claims not abandoned by the trustee under [sections 554(a) and 554(b)] remain part of the estate even after closure of the bankruptcy case, and the debtor loses all rights to those claims in his own name") (citing 11 U.S.C. § 554(d)).

## B. Contentions of the Parties Regarding Standing

In the Motion to Dismiss, defendants contend that plaintiff's claims of race discrimination under both federal and state law accrued prior to the filing of the amended Chapter 7 petition and are thus part of the bankruptcy estate, notwithstanding plaintiff's failure to include the claims in the Schedules. Accordingly, defendants argue that only the Trustee in Bankruptcy has standing to pursue the present action in this Court; they seek dismissal of plaintiff's Complaint on that ground. In response, plaintiff concedes that he lacks standing to pursue his § 1985(3) claim against defendants and his § 1981 claim against defendant Johnson because they accrued as of November 16, 2000, his last day at work for defendant Acme, and over a month before he filed his initial petition in bankruptcy.

Plaintiff insists, however, that although the alleged unlawful conduct which forms the basis of his § 1981 and § 1985(3) claims also forms the basis of his Title VII claim, the Title VII claim did not accrue until he received the EEOC right-to-sue letter on August 23, 2001, three months after his Chapter 7 case was closed. He argues that at the time he filed his amended Chapter 7 petition on January 16, 2001, he had no interest in his Title VII action because such action could not have been pursued without an EEOC right-to-sue letter authorizing the suit. Accordingly, plaintiff contends that his Title VII claims, and presumably his PHRA claims (for he makes no mention of standing regarding these state law claims) are not property of the bankruptcy estate and thus has he standing to pursue them. The Court rejects these arguments and concludes that plaintiff lacks standing to pursue his claims.

## C. Plaintiff's Title VII Claims

██ Plaintiff's Title VII claims accrued as of November 16, 2000, his last day of work for defendant Acme, two months be-

---

**3.** 11 U.S.C. § 554(c) states, in relevant part, that "[u]nless the court orders otherwise, any property *scheduled under section 521(1)* of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor ..." (emphasis added).

fore he filed his amended Chapter 7 petition on January 16, 2001. The Court concludes those claims were property of the bankruptcy estate notwithstanding the fact that plaintiff did not receive a right-to-sue letter from the EEOC until after the bankruptcy case was closed.

In *Williams v. Kaiser Permanente Division of Research*, No. C–99–4230–MJJ, 2000 WL 1262657 (N.D.Cal. Aug. 22, 2000), the plaintiff filed a Chapter 7 petition two weeks after she was terminated from her position with the defendant; thereafter, she filed an EEOC Charge of Discrimination claiming she was terminated based on her race. *Id.* at *2. Holding that "[a]n employment discrimination suit accrues as of the date of the alleged adverse employment action"—which in this case was the date of plaintiff's termination by defendant—the court concluded that because "all the elements necessary for a cause of action under Title VII existed as of the date" she filed her petition for bankruptcy, the cause of action was part of the bankruptcy estate. *Id.* at *3. Therefore, the court ruled that only the Trustee could pursue the cause of action and accordingly dismissed plaintiff's complaint for lack of standing. *Id.*

Similarly, in *Harris v. St. Louis University*, 114 B.R. 647 (E.D.Mo.1990), plaintiff completed an EEOC Charge Questionnaire two days after she was discharged from her position in which she asserted that she was unlawfully discharged by defendant due to her sex. *Id.* at 648. Three months later, she filed a Chapter 7 petition, but failed to list her discrimination claim on the attached Schedules. *Id.* Based on

those facts, the court concluded that because "all the elements necessary for a cause of action ... under Title VII ... were present" at the time plaintiff filed her Chapter 7 petition, her Title VII claim was property of the estate, and defendant's motion to dismiss for lack of standing was granted. *Id.* at 648–49.

The Court also finds the analysis in *Lott v. Sally Beauty Co.*, No. 3:00CV1216J20TJC, 2002 WL 533651 (M.D.Fla. March 5, 2002), and *Chandler v. Samford University*, 35 F.Supp.2d 861 (N.D.Ala.1999) apposite to the instant case.[4] In *Lott*, plaintiff filed a formal EEOC Charge of Discrimination alleging acts of sexual discrimination against her employer that formed the basis of a Title VII suit filed over a year later. *Lott*, 2002 WL 533651 at *1–*2. Prior to filing that suit, but while the EEOC Charge was still pending, plaintiff filed a petition in bankruptcy without disclosing the Charge on the Bankruptcy Schedules. *Id.* at *2. Because plaintiff "was aware of her EEOC charge, filed just one month before the bankruptcy proceeding," the court held that her Title VII cause of action was property of the bankruptcy estate and thus plaintiff "had a legal duty to disclose [this] claim" of discrimination in the Schedules. *Id.* at *4 & n. 3.

The plaintiff in *Chandler* filed a formal EEOC Charge of Discrimination the day after her temporary employment with defendant had ended. *Chandler*, 35 F.Supp.2d at 862. Several weeks thereafter, plaintiff's pending Chapter 13 proceeding was converted to a Chapter 7; howev-

---

4. *Lott* and *Chandler* were dismissed on grounds of judicial estoppel in that, *inter alia*, the plaintiffs' positions in the Title VII actions were held to be "inconsistent" with the positions they asserted in their earlier filed bankruptcy petitions because they failed to schedule or otherwise identify their claims of discrimination against defendants in those petitions. *See Lott*, 2002 WL 533651 at *4; *Chandler*, 35 F.Supp.2d at 865. Notwithstanding the fact that these cases were dismissed on grounds other than lack of standing, the Court finds these decisions to be instructive.

er, plaintiff did not amend her Schedules to reflect the EEOC Charge. *Id.* at 862–63, 864. One month later, she received an EEOC right-to-sue letter and subsequently brought a Title VII suit against defendant. *Id.* at 862. The court held that "it [was] obvious that [plaintiff] was aware of her potential claims against [defendant]" when she filed an EEOC Charge over one month before her Chapter 13 case was converted to Chapter 7. *Id.* at 864. Accordingly, the court concluded that because her "interest in her potential [Title VII] claim arose prior to the commencement of the Chapter 7 proceeding," those potential claims were property of the estate, and thus she had "an affirmative duty to disclose" them as assets in the Schedules. *Id.* at 865.

These cases clearly establish that plaintiff's Title VII claims in this case accrued as of his last day at work for defendant Acme, on November 16, 2000, two months before he filed his amended Chapter 7 petition on January 16, 2001, notwithstanding the fact that he did not receive an EEOC right-to-sue letter until after the Chapter 7 case was closed. Thus, plaintiff's Title VII claims are property of the bankruptcy estate under § 541. *See Cain,* 101 B.R. at 441–42 ("Courts have uniformly held that the broad scope of § 541 encompasses causes of action existing at the time of the commencement of the bankruptcy action."). Regardless of when he received his right-to-sue letter from the EEOC, by the time plaintiff filed his amended Chapter 7 petition, "all the necessary elements" of his Title VII claims were present-he had already been suspended from work due to the altercation with Mr. Seedes, received and rejected defendant Acme's return-to-work proposal, completed an EEOC Charge Questionnaire, and filed a formal EEOC Charge of Discrimination.

Because plaintiff failed to schedule or otherwise identify his Title VII claims in his amended Chapter 7 petition, *see* 11 U.S.C. § 554(c), and because those claims are part of the bankruptcy estate, only the Trustee in Bankruptcy, as the sole representative of the estate, has standing to pursue the claims. *See* 11 U.S.C. §§ 323(a), 323(b); *see also Cain,* 101 B.R. at 442 (concluding that "[o]nly the trustee ... has the authority to prosecute and/or settle such causes of action" that are part of the bankruptcy estate); *Calabrese,* 170 F.Supp.2d at 256 ("Where an unscheduled claim remains the property of the bankruptcy estate, a debtor lacks standing to pursue that claim after emerging from bankruptcy and the claim must be dismissed."). Accordingly, the Court dismisses plaintiff's Title VII claims for lack of standing.

### D. Plaintiff's § 1981 and § 1985(3) Claims

Defendants raise the same argument—plaintiff's lack of standing—in opposition to plaintiff's allegations of a violation of § 1981 by defendant Johnson and a violation of § 1985(3) under the Fourteenth Amendment against all defendants. Plaintiff, in his response to defendants' Motion, concedes that he lacks standing to pursue his § 1981 and 1985(3) claims, admitting they accrued as of November 16, 2000, his last day at work for defendant Acme, and two months before he filed his amended Chapter 7 petition. *See supra* at III.B.

For the same reasons set forth *infra* with respect to plaintiff's Title VII claims, the Court concludes plaintiff lacks standing to pursue his § 1981 and § 1985(3) claims. Such claims, which had accrued before plaintiff filed his amended Chapter 7 petition, are property of the bankruptcy estate.

### E. Plaintiff's PHRA Claims

 The Court finds *Cain v. Hyatt,* 101 B.R. 440 (E.D.Pa.1989), to be instructive with respect to plaintiff's claims of discrimination under the PHRA. In *Cain,* plaintiff brought suit against his employer under the PHRA, alleging unlawful employment termination as a result of his contraction of AIDS. *Id.* at 441. Plaintiff filed that suit over a year after he was terminated from his employment. *Id.* Subsequent to his alleged illegal termination, but one year prior to the filing of his PHRA suit, plaintiff filed a Chapter 7 petition, failing to list his discrimination claims against defendant in the Bankruptcy Schedules. Plaintiff's Chapter 7 case was closed seven months prior to the filing of his PHRA action.

The court in *Cain* held that "it is clear that the PHRA cause of action, which existed at the time plaintiff commenced his Chapter 7 case, constitutes property of the estate." *Id.* at 442. Accordingly, the court concluded that plaintiff could not prosecute the PHRA action in his name and that only the appointed Trustee, as sole representative of the bankruptcy estate, had "authority to prosecute and/or settle" that cause of action. *Id.* It decided to stay the proceedings and place the action into the civil suspense file "until such time as either a trustee in Bankruptcy is substituted as plaintiff or until such action is taken by the Bankruptcy Court as will permit the trial of this action to proceed." *Id.* at 443.

The Court agrees with the reasoning of the *Cain* decision. As in *Cain,* plaintiff in this case filed a petition in bankruptcy under Chapter 7 subsequent to his last day at work for defendant Acme and prior to the filing of the Complaint in this case. Plaintiff's cause of action under the PHRA accrued before he filed his amended bankruptcy petition and are thus part of the bankruptcy estate. Accordingly, plaintiff cannot pursue the PHRA claims in his name because only the Trustee in Bankruptcy has the authority to "prosecute and/or settle" them. *Id.* at 442.

## IV. CONCLUSION

For the foregoing reasons, the Court grants defendant's Motion to Dismiss for lack of standing as plaintiff's claims of discrimination, under both federal and state law, are part of the bankruptcy estate, which is now closed. Plaintiff's Complaint is dismissed without prejudice to the right of the Trustee in Bankruptcy to be substituted as a party-plaintiff in the event the Bankruptcy Court reopens the bankruptcy proceedings.